UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER RODRIGUEZ, | Case No. SACV 17-1456 JC |
|           Plaintiff, | |
|       v. | MEMORANDUM OPINION |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
|           Defendant. | |

## I.  SUMMARY

On August 23, 2017, plaintiff Javier Rodriguez filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion") (collectively "Motions").  The Court has taken the Motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; August 28, 2017 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

In February 2012, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits alleging disability beginning on October 11, 2010, due to epilepsy, loss of awareness, and depression. (Administrative Record ("AR") 208, 215, 245, 526).

A prior Administrative Law Judge ("Prior ALJ") examined the medical record, and on February 6, 2014, heard testimony from plaintiff (who was represented by counsel and assisted by a Spanish language interpreter) and a vocational expert ("Pre-Remand Hearing"). (AR 645-67).

On March 7, 2014, the Prior ALJ found plaintiff not disabled. (AR 23-40). The Appeals Council subsequently denied plaintiff's application for review. (AR 1). On June 23, 2016, this Court entered judgment reversing and remanding the case for further proceedings pursuant to the parties' stipulation for voluntary remand. (AR 631-32). The Appeals Council in turn remanded the case to the current ALJ for a new hearing. (AR 641-43).

On remand, the ALJ held a hearing on May 2, 2017 ("Post-Remand Hearing"), during which the ALJ heard testimony from plaintiff (who was represented by counsel and assisted by a Spanish language interpreter) and vocational and medical experts. (AR 526, 571-84).

On June 20, 2017, the ALJ found plaintiff not disabled through the date of the decision at issue here. (AR 526-63). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: seizures/epilepsy of independent left and right temporal lobe, depressive disorder, and borderline intellectual functioning disorder (AR 532); (2) plaintiff's impairments, considered

2

individually or in combination, did not meet or medically equal a listed impairment (AR 532); (3) plaintiff retained the residual functional capacity to perform medium work (20 C.F.R. §§ 404.1567(c), 416.967(c)) with additional limitations[1] (AR 540); (4) plaintiff was unable to perform any past relevant work (AR 560); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 562); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of his subjective symptoms were not entirely consistent with the medical evidence and other evidence in the record (AR 543).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  To be considered disabled, a claimant must have an impairment of such severity that he is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

///

---

[1]The ALJ determined that plaintiff also (i) could occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds; (ii) could stand and walk with normal breaks for a total of six hours of an eight-hour day; (iii) could sit with normal breaks for a total of six hours of an eight-hour day; (iv) had postural limitations which were all frequent, except occasional for balancing; (v) could not climb ladders, ropes, or scaffolds; (vi) could not work at unprotected heights, or operate a motor vehicle, or dangerous machinery; and (vii) was limited to simple routine tasks with no interaction with the general public and only occasional tasks requiring teamwork.  (AR 540).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

**B.     Federal Court Review of Social Security Disability Decisions**

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability

///

4

determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (citation and quotation marks omitted). It is "more than a mere scintilla, but less than a preponderance." Id. When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

## IV.   DISCUSSION

### A.   The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physician

Plaintiff essentially contends that the ALJ improperly rejected the opinions of Dr. Mona Sazgar, one of plaintiff's treating neurologists, "concerning listing level seizures." (Plaintiff's Motion at 1-13). For the reasons discussed below, plaintiff has not shown that a reversal or remand is required on this basis.

### 1.   Pertinent Facts

In a letter signed on October 19, 2012 ("2012 Letter"), Dr. Sazgar diagnosed plaintiff with "medically refractory complex partial seizures," and opined, in pertinent part, that (1) plaintiff continued to have two to three seizures per week; (2) plaintiff's seizures "result in confusion and alteration of [plaintiff's]

5

awareness[]"; (3) "[plaintiff's] longest seizure freedom has been 2 weeks or shorter[]"; (4) plaintiff's "temporal lobe epilepsy" and medication "can result in limitations in [plaintiff's] cognition and memory[]"; (5) "[w]ith his lack of response to multiple seizure medications in the past, the likelihood that any other seizure medications can make the [plaintiff] seizure-free is in the range of 4% or less[]"; (6) limitations in cognition and memory caused by plaintiff's epilepsy and related treatment "will further interfere with the [plaintiff's] ability to hold a job"; and (7) "[plaintiff's] medically refractory epilepsy and his frequent seizures have resulted in his disability." (AR 445).

In a statement dated April 10, 2014 ("2014 Statement"), Dr. Sazgar "certif[ied]" that she "reviewed Rule 11.03 'Epilepsy-nonconvulsive epilepsy (petit mal, psychomotor, or focal)[]'" and opined she "believe[s] . . . [plaintiff] satisfies the criteria of the rule and/or has an impairment that is medically equal in severity and duration to the criteria for epilespy [sic]-nonconvulsive," essentially because: (1) plaintiff "has well-documented complex partial seizures of independent left and right temporal lobe origin"; (2) "[doctors] were able to record 7 [such seizures] during . . . inpatient video-EEG monitoring [] at the UCI Medical Center (Jan[uary] 7-11, 2013)"; and (3) "[plaintiff's] seizures are not fully responding to medical therapy and are disabling." (AR 518).

In a statement dated May 1, 2017 ("2017 Statement"), Dr. Sazgar "certif[ied]" that she "reviewed Rule 11.03 'Epilepsy'" that had been attached to the 2017 Statement, and opined she "believe[s] . . . [plaintiff] satisfies the criteria of the rule and/or has an impairment that is medically equal in severity and duration to the criteria for [sic]" essentially because: (1) plaintiff had "medically refractory epilepsy of independent left [and] right temporal lobe[]"; (2) plaintiff "[was] experiencing complex partial seizures (dyscognitive) 3-4 times a month"; (3) plaintiff's "episodes [] usually manifested with staring, lip smacking, lack of verbal responsiveness at times followed by head and body [movement] to one side

and generalized tonic-clonic activity," with "post ictal confusion, some tongue laceration, [and] incontinence"; and (4) "[plaintiff] developed some memory [] and cognitive deficits" due to his "neurologic problem and possibly side effects of his medication." (AR 963).

The foregoing medical opinion evidence is collectively referred to below as "Dr. Sazgar's Opinions."

## 2. Pertinent Law

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians" (*e.g.*, "State agency medical or psychological consultant[s]"). 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); 20 C.F.R. §§ 416.927(c)(1)-(2) & (e), 416.902, 416.913(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). In turn, an examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted). Unless a treating opinion is controlling, it is evaluated like other medical opinions using various factors including "frequency of examination," "supportability," and "consistency . . . with the record as a whole." 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); Trevizo, 871 F.3d at 675. The "supportability" of a medical opinion depends on the extent to which the medical source "presents relevant evidence to support a medical opinion, particularly

///

medical signs and laboratory findings" and provides a detailed explanation for the opinion. 20 C.F.R. § 404.1527(c)(3), 416.927(c)(3).

A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). An ALJ may reject the uncontroverted opinion of a treating physician by providing "clear and convincing reasons that are supported by substantial evidence" for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where a treating physician's opinion is contradicted by another doctor's opinion, an ALJ may reject the treating physician's opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted). In addition, an ALJ may reject the opinion of any physician, including a treating physician, to the extent the opinion is "brief, conclusory and inadequately supported by clinical findings." Bray v. Commissioner of Social Security Administration, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks omitted).

### 3.    Analysis

First, the ALJ properly rejected Dr. Sazgar's conclusory opinions that plaintiff's epilepsy and seizures had "resulted in [] disability" (AR 445) or were "disabling[.]" (AR 518). Non-medical, conclusory opinions that a plaintiff is disabled or unable to work are not binding on the Commissioner, and may be rejected outright. See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight

in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted); Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008) ("[The] determination of a claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance."); see also 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must provide explanation only when rejecting "significant probative evidence") (citation and quotation marks omitted). The same is true for Dr. Sazgar's equivocal "belie[f]" that plaintiff meets and/or equals Listing 11.02 or 11.03. (AR 518, 963); see, e.g., 20 C.F.R. §§ 404.1526(e)(3), 416.926(e)(3) ("[T]he responsibility for deciding medical equivalence rests with the administrative law judge or Appeals Council."); Social Security Ruling ("SSR") 17-2P ("Whether an impairment(s) medically equals the requirements of a listed impairment is an issue reserved to the Commissioner.").

Second, the ALJ properly rejected Dr. Sazgar's Opinions, in part, based on plaintiff's non-compliance with prescribed medication. (AR 558); see Owen v. Astrue, 551 F.3d 792, 799-800 & n.3 (8th Cir. 2008) (ALJ properly gave less weight to treating doctor's opinion because it failed to account for claimant's non-compliance with course of treatment prescribed) (citations omitted); Passi v. Colvin, 2015 WL 4163100, *5 (C.D. Cal. July 9, 2015) ("non-compliance" with prescribed medication among "specific, legitimate reasons" for rejecting physician's opinions). For one of many examples, Dr. Sazgar's opinion in the 2014 Statement that plaintiff had listing level seizures was primarily predicated on evidence that doctors had recorded seven (7) seizures during inpatient video-EEG

monitoring of plaintiff in January 2013.  (AR 518).  Nonetheless, as the ALJ

noted, the uncontroverted evidence suggests that plaintiff had experienced so

many seizures during the monitoring because he had stopped taking his

antiepileptic medications just before he was admitted to the monitoring unit.

Consistently, plaintiff reportedly "did not experience any further seizures for 24

hours" after the testing was over once plaintiff's medication had been "restarted."

(AR 552) (citing, in part, Exhibits 15F at 3 [AR 496], 19F at 113 [AR 925]).

        Third, the ALJ properly rejected Dr. Sazgar's Opinions, in part, because

they were inconsistent with the overall medical evidence which mostly reflects

that plaintiff had been prescribed "conservative" treatment, and that examinations

of plaintiff resulted in mostly unremarkable findings.  See Burrell v. Colvin, 775

F.3d 1133, 1140 (9th Cir. 2014) ("[A]n ALJ may discredit treating physicians'

opinions that are conclusory, brief, and unsupported by the record as a whole

. . . .") (citing Batson v. Commissioner of Social Security Administration, 359 F.3d

1190, 1195 (9th Cir. 2004)); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.

2001) (ALJ properly rejected opinion of treating physician where physician had

prescribed conservative treatment and the plaintiff's activities and lack of

complaints were inconsistent with the physician's disability assessment); see also

Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ properly rejected

treating physician's opinion where "treatment notes provide[d] no basis for the

functional restrictions [physician] opined should be imposed on [claimant]").  For

example, as the ALJ noted, contrary to Dr. Sazgar's findings that plaintiff's

seizures were disabling (AR 445, 518), the record actually reflects "routine

treatment [of plaintiff] with medications and many normal and mild [examination]

findings."  (AR 557-58; see, e.g., AR 532-37 (citing Exhibits 9F at 4-5 [AR 438-

39], 7F at 5-6, 10-14, 19-20 [AR 403-04, 408-12, 417-18], 13F at 30-31 [AR 482-

83], 16F at 1-4 [AR 500-03], 19F at 14, 19, 43-44, 46, 50-51, 53, 65-68, 81-82,

84-85, 88-90, 92-94, 100-03 [AR 826, 831, 855-56, 858, 862-63, 865, 877-80,

893-94, 896-97, 900-02, 904-06, 912-15]); see also AR 534 (observing that one medical record had made "no mention of recent seizure activity" at all) (citing Exhibit 3F at 2-5 [AR 371-74]).

Similarly, as the ALJ also noted, and contrary to Dr. Sazgar's Opinions that plaintiff's seizures were disabling even with treatment, plaintiff's medical records reflect that the frequency, duration, and intensity of plaintiff's seizure activity actually diminished when plaintiff was taking his medications as prescribed. (AR 534-35, 558 (citing Exhibits 7F at 13, 19-20 [AR 411, 417-18], 16F at 1-4 [AR 500-03], 19F at 100-03 [AR 912-15]); see, e.g., AR 418 [10/20/11 Office Visit Note that "[s]eizures have decreased from 3 per week to approximately 2 per month since [plaintiff] was started on Lamictal."]; AR 461, 924 [1/7/13 "[e]valuation for seizures" report noting plaintiff's seizure frequency reduced from "2 to 3 seizures per week" to "anywhere from 3 to 4 times per month with . . . Lamictal," and also "[went] down to 2 times per month" once plaintiff started taking Keppra – a medication with which plaintiff reportedly was "quite happy"]; AR 918 [4/16/13 "Epilepsy followup" record noting "some decrease in seizure frequency" when plaintiff's "Keppra dose was increased . . . and Lamictal was continued"]; AR 912-15 [7/25/13 "Routine followup" note reporting plaintiff's seizure frequency "improved" from "1 to 3 seizures per week" to "approximately 3 seizures per month" on "current dose" of medication, and "[plaintiff] showed improvement of the seizure control with [medication]"]; AR 900 [7/1/14 note that "on combination of Keppra and Lamictal" plaintiff experiences only "about 3 seizures per month"] (emphasis added); AR 898 [9/30/14 Note that plaintiff reported reduction in seizure frequency when taking combination of Keppra and Lamictal]; AR 896 [11/5/14 note that "seizure frequency has improved from 1 to 3 seizures per week down to about 1 to 2 seizures per month"]; AR 862 [9/15/15 note that plaintiff's seizures had "reduced from 4 per month down to 1 per month" since prior visit and that plaintiff was "overall [] very happy"]; AR 814 [9/27/16

note that plaintiff was "tolerating [] medication well" and "continues reporting at least 4 complex partial seizures per month" which wife described as "milder with shorter postictal confusion"]; AR 949 [2/21/17 note that since last visit plaintiff's seizures "[had] been milder and shorter lasting[,]" and "[o]n average, [plaintiff] experienced about 3 complex partial seizures per month"]).  To the extent plaintiff suggests that the medical evidence actually supports Dr. Sazgar's Opinions (Plaintiff's Motion at 5-10), this Court will not second guess the ALJ's reasonable determination to the contrary, even if such evidence could give rise to inferences more favorable to plaintiff.  See Trevizo, 871 F.3d at 674-75 (citations omitted).

Fourth, the ALJ properly rejected Dr. Sazgar's Opinions to the extent they were inconsistent with plaintiff's own statements regarding his functional abilities. See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 601-02 (9th Cir. 1999) (ALJ may reject medical opinion that is inconsistent with other evidence of record including claimant's statements regarding daily activities).  For example, as discussed in more detail below, as the ALJ noted (AR 543, 548-50, 558-59), contrary to plaintiff's complaints of disabling seizures, there is evidence that plaintiff was still able to engage in multiple daily activities, including various household chores and attempts to obtain work.  (See, e.g., AR 197, 261-65, 282-86, 312-16, 430, 489, 577-78, 662-63, 814, 936, 949, 952).

Finally, the ALJ properly rejected Dr. Sazgar's Opinions in favor of the conflicting opinions of two independent, board certified neurological consultative examiners.  (AR 543-44).  Specifically, as the ALJ noted, Dr. Robert A. Moore diagnosed plaintiff with "[c]omplex partial seizure disorder[] under poor control," noting "[plaintiff's] focal seizures are associated with alteration and/or loss of consciousness[,]" and opined that plaintiff had "unrestricted ability to stand, sit, walk, bend, stoop, lift, carry[,] . . . operate foot controls" and "unrestricted use of the upper extremities," and that, "[b]ecause of his seizures, the [plaintiff] cannot climb, balance, work at heights, work around moving machinery, or operate a

12

motor vehicle, [and] cannot use power tools." (AR 543-44) (citing Exhibit 9F at 5 [AR 439]). Dr. Sarah L. Maze essentially determined that – although plaintiff "continue[d] to have four to five seizures each month[,]" plaintiff was still able to perform jobs at the medium exertion level (*i.e.*, "lift and carry 50 pounds occasionally and 25 pounds frequently[]" with sitting, standing, and walking for "6 hours of an 8-hour workday") that did not involve "work at heights or operat[ion] [of] a motor vehicle." (AR 544) (citing Exhibit 20F at 3, 5-10 [AR 937, 939-44]). The opinions of Drs. Moore and Maze were supported by the physicians' independent examinations of plaintiff (AR 437-39, 935-38), and thus, without more, constituted substantial evidence upon which the ALJ could properly rely to reject Dr. Sazgar's Opinions. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion on its own constituted substantial evidence, because it rested on physician's independent examination of claimant) (citations omitted).

To the extent plaintiff is also attempting to argue that the ALJ materially erred at step three (Plaintiff's Motion at 2), he has not shown that a remand or reversal is warranted. Specifically, plaintiff asserts that "[b]ased upon Dr. Sazgar's treating specialist opinion, [plaintiff] should be found disabled because he meets or equals the seizure listing." (Plaintiff's Motion at 2) (citing "20 C.F.R. Pt. 404, Subpt. P, App. 1 Rule 11.02 and 11.03"). Such conclusory argument, however, is insufficient to justify remanding the case for further proceedings. See Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address challenge to ALJ's finding where claimant "failed to argue th[e] issue with any specificity in [] briefing") (citation omitted); Independent Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (party's "bare assertion of an issue" in briefing "does not preserve a claim" on appeal) (citations omitted); DeBerry v. Commissioner of Social Security Administration, 352 Fed. Appx. 173, 176 (9th Cir. 2009) (declining to

consider claim that ALJ failed properly to apply Social Security law where claimant did not argue the issue "with any specificity" in her opening brief and failed to cite "any evidence or legal authority" in support of her position) (citation omitted). Indeed, an ALJ is not required to address a particular listed impairment unless the claimant presents a plausible theory based on specific evidence in the record as to how the claimant's impairment(s) meets or medically equals the specific listing. See Burch, 400 F.3d at 683 (citing Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)); Stubbs v. Social Security Administration, 419 Fed. Appx. 771, 772 (9th Cir. 2011) (ALJ not required to consider whether claimant's impairments met or equaled specific listings where claimant "has not offered a plausible theory" regarding such listings) (citations omitted); see, e.g., Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.") (quoting Burch, 400 F.3d at 683) (quotation marks omitted); Noah v. Berryhill, 732 Fed. Appx. 520, 521-22 (9th Cir. 2018) (rejecting contention that ALJ erroneously failed to articulate sufficiently detailed rationale at step three where claimant herself "[did] not proffer the requisite specific explanation" as to medical evidence); Samples v. Commissioner of Social Security Administration, 466 Fed. Appx. 584, 586 (9th Cir. 2012) ("ALJ was not required to discuss how the combined effects of [claimant's] impairments might meet or equal a listing" since claimant "did not meet her burden of showing [as much]") (citations omitted). Since, as discussed above, the ALJ properly rejected Dr. Sazgar's Opinions, plaintiff's argument that he should be found disabled based solely upon such opinions is meritless.

Accordingly, a remand or reversal is not warranted on this claim.

///

///

14

**B.  The ALJ Properly Evaluated Plaintiff's Subjective Complaints**

Plaintiff contends that a remand or reversal is warranted because the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective complaints.  (Plaintiff's Motion at 13-19).  The Court disagrees.

**1.  Pertinent Law**

When determining disability, an ALJ is required to consider a claimant's impairment-related pain and other subjective symptoms at each step of the sequential evaluation process.  20 C.F.R. §§ 404.1529(a) & (d), 416.929(a) & (d).  Accordingly, when a claimant presents "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his or her symptoms ("subjective statements" or "subjective complaints") are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities.  20 C.F.R. §§ 404.1529(a), (c)(4), 416.929(a), (c)(4); SSR 16-3p, 2017 WL 5180304, at *4-*10.[2]

_____

[2]Social Security Rulings reflect the Social Security Administration's ("SSA") official interpretation of pertinent statutes, regulations, and policies.  20 C.F.R. § 402.35(b)(1).  Although they "do not carry the 'force of law,'" Social Security Rulings "are binding on all components of the . . . Administration[,]" and are entitled to deference if they are "consistent with the Social Security Act and regulations."  20 C.F.R. § 402.35(b)(1); Bray, 554 F.3d at 1224 (citations and quotation marks omitted); see also Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984) (discussing weight and function of Social Security rulings).  Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation."  See SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11.  The SSA republished SSR 16-3p making no change to the substantive policy interpretation regarding evaluation of a claimant's subjective complaints, but clarifying that the SSA would apply SSR
(continued...)

When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities.  See SSR 16-3p, 2017 WL 5180304, at *8.  In such cases, when there is no affirmative finding of malingering, an ALJ may "reject" or give less weight to the individual's subjective statements "only by providing specific, clear, and convincing reasons for doing so."  Brown-Hunter, 806 F.3d at 488-89.[3]  If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it.  See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

## 2.    Analysis

First, the ALJ properly gave less weight to plaintiff's subjective complaints based on evidence that plaintiff had been prescribed only "conservative, routine treatment with medications[.]"  (AR 543); see Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted), cert. denied, 552 U.S. 1141 (2008).  For example, as the ALJ's thorough and detailed discussion of the record medical evidence reflects, plaintiff's doctors had consistently addressed plaintiff's seizures simply by making adjustments and/or

---

[2](...continued)
16-3p only "[when making] determinations and decisions on or after March 28, 2016[,]" and that federal courts should apply "the rules [regarding subjective symptom evaluation] that were in effect at the time" an ALJ's decision being reviewed became final.  SSR 16-3p, 2017 WL 5180304, at *1, *13 n.27.

[3]It appears to the Court, based upon its research of the origins of the requirement that there be "specific, clear and convincing" reasons to reject or give less weight to an individual's subjective statements absent an affirmative finding of malingering, that such standard of proof remains applicable under SSR 16-3p.  See Trevizo, 871 F.3d at 678-79 & n.5 (citations omitted).

16

changes to plaintiff's prescribed medications.  (See, e.g., AR 534-36, 552) (citing Exhibits 7F at 11-14, 19-20 [AR 409-12, 417-18]; 11F at 2-3 [AR 447-48]; 13F at 6, 9, 19-20, 24-25 [AR 458, 461, 471-72, 476-77]; 19F at 43, 84-85, 92-95, 106-07 [AR 855, 896-97, 904-07, 918-19]).

Second, the ALJ properly gave less weight to plaintiff's subjective statements to the extent plaintiff failed to take the medication he had been prescribed.  See Molina, 674 F.3d at 1113 (ALJ may properly consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" when evaluating claimant's subjective complaints) (citations and internal quotation marks omitted); SSR 16-3p, 2016 WL 1119029, at *7-*8 (ALJ may give less weight to subjective statements where "individual fails to follow prescribed treatment that might improve symptoms").  As the ALJ noted, the record contains several references to plaintiff's medication non-compliance.  (See, e.g., AR 533-35, 543, 552) (citing Exhibits 2F at 5-7 [AR 364-66]; 15F at 2-4 [AR 495-97]; 16F at 1 [AR 500]; 19F at 90, 102, 113 [AR 902, 914, 925]).  For one instance, as the ALJ noted, and as discussed above, the medical evidence reflects that plaintiff was instructed to stop taking his seizure medication while the EEG study was being conducted.  (AR 925, 926, 927).  Hence, to the extent plaintiff argues that he is disabled based on the number seizures he experienced during that EEG study, the ALJ properly gave less weight to such a contention.  See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).  While an ALJ may not reject symptom testimony where a claimant provides "evidence of a good reason for not taking medication," id., as noted above, plaintiff has presented no such reason.  Similarly, the ALJ also properly gave less weight to plaintiff's subjective complaints about mental limitations in light of the apparent lack of mental health treatment.  (AR 543 [noting medical record "evidences . . . no mental health treatment"]); see Molina, 674 F.3d at 1113 (citations omitted).

Third, the ALJ properly gave less weight to plaintiff's subjective complaints based on evidence that plaintiff had engaged in daily activities which required a greater level of functioning than plaintiff allegedly had. See Burrell, 775 F.3d at 1137 (inconsistencies between claimant's testimony and claimant's reported activities valid reason for giving less weight to claimant's subjective complaints) (citation omitted); SSR 16-3p, 2016 WL 1119029, at *7 (ALJ may determine that claimant's symptoms "are less likely to reduce his or her capacities to perform work-related activities" where claimant's subjective complaints are inconsistent with evidence of claimant's daily activities) (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). For example, as the ALJ discussed at great length (AR 540-43, 556, 558-60), contrary to plaintiff's allegations of disabling seizures and other symptoms, plaintiff has stated, among other things, that he is able to help with several household chores, do gardening, go to the grocery store, help his wife who babysits, and prepare his own meals (although his wife usually does), that he has no problems with personal care, and that he goes outside twice a day, travels by walking and using public transportation, regularly attends church, goes to the doctor, and goes out to restaurants. (AR 543, 548-50, 558-59) (citing Exhibits 15B at 3 [AR 197]; 5E at 2-6 [AR 261-65]; 8E at 2-6 [AR 282-86]; 13E at 2-6 [AR 312-16]; 8F at 5 [AR 430], 14F at 5 [AR 489]; 20F at 2 [AR 936]). As the ALJ also explained, there is significant evidence in the record that plaintiff had continued to seek out and obtain work on almost a daily basis. (See, e.g., AR 556, 559-60) (citing Exhibit 15B at 3 [AR 197] ["On a typical day [plaintiff] goes to Home Depot to try to find some daily work."]; Pre-Remand Hearing [AR 662-63] [plaintiff looks for work each day at Home Depot and typically works one to three days a week]; Post-Remand Hearing [AR 577-78] [testimony that plaintiff continued to look for and obtain work at Home Depot with daily hours varying from two to eight hours]; Exhibit 19F at 2 [AR 814], 21F at 3, 6 [AR 949, 952]).

///

18

As plaintiff correctly suggests (Plaintiff's Motion at 18), a claimant "does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted). Nonetheless, this does not mean that an ALJ must find that a claimant's daily activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount conflicting subjective symptom testimony. To the contrary, even where a claimant's activities suggest some difficulty in functioning, an ALJ may give less weight to subjective complaints to the extent a claimant's apparent actual level of activity is inconsistent with the extent of functional limitation the claimant has alleged. See Reddick, 157 F.3d at 722 (ALJ may consider daily activities to extent plaintiff's "level of activity [is] inconsistent with [the] . . . claimed limitations"); cf. Molina, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for [giving less weight to] the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citations omitted). Here, for example, substantial evidence supports the ALJ's conclusion that plaintiff's multiple daily activities, including his almost daily attempts to find work, undermine plaintiff's position that his seizures prevent him from doing any work at all. See, e.g., Carter v. Astrue, 472 Fed. Appx. 550, 552 (9th Cir. 2012) (ALJ properly found claimant's testimony "undermined" by evidence that claimant had "worked part-time for nearly a[] year" after alleged onset date); Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (evidence that plaintiff had worked "under the table" until "well after" date last insured was "clear and convincing reason[]" for giving less weight to claimant's testimony); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)).

Fourth, the ALJ properly gave less weight to plaintiff's subjective complaints based on internal contradictions in plaintiff's own statements. See Rollins, 261 F.3d at 859 (citation omitted). For example, as the ALJ noted, plaintiff testified at the Pre-Remand Hearing that he had received unemployment benefits for a period of time after the alleged onset date. (AR 654, 662). The ALJ suggests that such evidence "undermines" plaintiff's subjective complaints, in part, since "[i]n order to receive [unemployment insurance benefits] one certifies he is not working, but he is able to work and is looking for work." (AR 560) (citations omitted). Even assuming, as plaintiff appears to suggest (Plaintiff's Motion at 19), evidence that plaintiff had applied for unemployment benefits, on its own, is generally an insufficient basis for discounting a claimant's subjective complaints, here plaintiff also testified that for a year and a half he had actually collected unemployment benefits while purportedly disabled and still experiencing "two to three [seizures] a week" and had continued to look for work and reported as much to the California Employment Development Department in order to continue receiving unemployment benefits, and also that he was "physically able" to perform "a light job." (AR 654-55, 662).

Fifth, contrary to plaintiff's allegations of difficulty with memory, concentration, thinking, and understanding, the ALJ observed at the hearing that plaintiff had been "lucid and responsive to questioning[,]" displayed "good memory recall and logical thinking," and gave answers that "were relevant and responsive." (AR 560). The ALJ was entitled to consider such observations among several other factors when determining how much weight to give plaintiff's subjective complaints. See Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (when evaluating symptom testimony ALJ may consider observations that claimant acted in manner at hearing that was inconsistent with alleged disabling symptoms) (citation omitted); Drouin v. Sullivan, 966 F.2d 1255, 1259 (9th Cir. 1992) (upholding rejection of claimant's statements where ALJ's observation of

claimant at the hearing was one of several legitimate reasons stated); see also SSR 16-3p, 2016 WL 1119029, *7 (ALJ "will consider any personal observations of the [claimant] in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file.").

Finally, the ALJ properly gave less weight to plaintiff's subjective complaints due, in part, to the absence of supporting objective medical evidence. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider . . . ."); cf. SSR 16-3p, 2016 WL 1119029, at *5 ("[ALJ may] not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). For example, as the ALJ noted, the medical evidence routinely documents "many normal and mild findings" on examination of plaintiff. (AR 532-37, 543; see, e.g., AR 403-04, 408-12, 417-18, 438-39, 482-83, 826, 831, 855-56, 858, 862-63, 865, 877-80, 893-94, 896-97, 900-02, 904-06, 912-15). As noted above, contrary to plaintiff's complaints of disabling seizures, the record also reflects that the frequency, duration, and intensity of plaintiff's seizure activity consistently decreased whenever plaintiff was taking his medications as prescribed. (AR 543; see, e.g., AR 418, 461, 814, 862, 896, 898, 900, 912-15, 918, 924, 949). The ALJ could properly give less weight to plaintiff's subjective complaints on this basis. See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (evidence that claimant "responded favorably to conservative treatment" inconsistent with plaintiff's reports of disabling pain); Warre v. Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]") (citations omitted); Bailey v. Colvin, 659 Fed. Appx. 413, 415 (9th Cir. 2016) (evidence that

"impairments had been alleviated by effective medical treatment," to the extent inconsistent with "alleged total disability[,]" specific, clear, and convincing reason for discounting subjective complaints) (citation omitted).

To the extent plaintiff argues that the medical evidence overall actually supports his subjective complaints (Plaintiff's Motion at 16-18), the Court again declines the invitation to second guess the ALJ's reasonable determination to the contrary. See Thomas, 278 F.3d at 959 (citation omitted).

Accordingly, a remand or reversal is not warranted on this basis.

## C.    A Remand for the Evaluation of New Medical Opinion Evidence Is Not Warranted

Plaintiff contends that a remand is warranted based on "new and material evidence," specifically, a report dated September 21, 2017, obtained by plaintiff after the ALJ issued his decision ("Post-Decision Statement"), in which Dr. Sazgar purportedly "addresse[s]" various "erroneous contentions" in the ALJ's decision. (Plaintiff's Motion at 20; Plaintiff's Motion Exhibit 1). (Plaintiff's Motion at 20). According to plaintiff, Dr. Sazgar "reviewed" the ALJ's decision, and based thereon "report[ed] that [plaintiff's] ongoing seizures continue to be refractory, they cannot be controlled with surgery, there is no evidence of non-compliance, and examination findings continue to be normal." (Plaintiff's Motion at 20).

A district court may remand a case in light of new evidence that was not before the ALJ or the Appeals Council only if the plaintiff demonstrates that (1) "the new evidence is material to a disability determination;" and (2) the "claimant has [] good cause for having failed to present the new evidence to the ALJ earlier." Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (citing 42 U.S.C. § 405(g)). New evidence is material if it "bear[s] directly and substantially" on plaintiff's claim, and there is a "reasonable possibility" that the evidence could have changed the ALJ's decision. See Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) (citation omitted); Booz v. Secretary of Health &

Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984).  Plaintiff fails to show that he is entitled to a remand on this basis

First, plaintiff points to no evidence in the Post-Decision Statement which realistically appears to be at all "new."  In fact, Dr. Sazgar in large part appears simply to reiterate the same medical opinions she had expressed in the 2017 Statement (*i.e.*, less than five months earlier) based on mostly the same medical evidence that was already in the record when the ALJ issued his decision.  (Compare Ex. 1 at 1-2, 3 with AR 963).  Plaintiff's single-sentence, conclusory summary of the Post-Decision Statement is insufficient otherwise to justify a remand based on such evidence.  See Carmickle, 533 F.3d at 1161 n.2 (citation omitted); Independent Towers of Washington, 350 F.3d at 929 (citations omitted); DeBerry, 352 Fed. Appx. at 176 (citation omitted); Moody v. Berryhill, 245 F. Supp. 3d 1028, 1032-33 (C.D. Ill., Mar. 28, 2017) ("The Court 'cannot fill the void [in a claimant's analysis] by crafting arguments and performing the necessary legal research.'") (citation omitted).

Second, plaintiff fails to identify any arguably new evidence that is material.  To the contrary, in the Post-Decision Statement Dr. Sazgar once again provides non-medical, conclusory opinions that plaintiff's seizures are "disabling[]" (Ex. 1 at 2-3) which, as noted above, are entitled to no weight at all in the ALJ's disability determination.  See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); Ukolov, 420 F.3d at 1004 (citation omitted); Vincent, 739 F.2d at 1394-95 (citation omitted); Boardman, 286 Fed. Appx. at 399.  In addition, plaintiff points to no legal authority which supports Dr. Sazgar's apparent belief – a view plaintiff seems to share – that plaintiff may be found disabled simply because he is not completely "seizure-free."  (Plaintiff's Motion at 20; Plaintiff's Motion Ex. 1; see also, Plaintiff's Motion at 10 [arguing that the record medical evidence "supports seizure activity consistent with the opinion of Dr. Sazgar"]); see generally

///

23

1 <u>Matthews v. Shalala</u>, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an
2 impairment is insufficient proof of a disability.") (citation omitted).

3 Finally, even assuming (without deciding) that the Post-Decision Statement
4 contains some new and material evidence, plaintiff nonetheless fails to
5 demonstrate good cause for not offering such evidence earlier. Plaintiff does not
6 establish good cause simply by obtaining a new report from a physician who
7 effectively reiterates the same medical opinions that the ALJ rejected in an
8 unfavorable decision. <u>Cf.</u> <u>Mayes</u>, 276 F.3d at 463 ("A claimant does not meet the
9 good cause requirement by merely obtaining a more favorable report once his or
10 her claim has been denied.").

11 Accordingly, a remand is not warranted on this basis.

12 **V.    CONCLUSION**

13 For the foregoing reasons, the decision of the Commissioner of Social
14 Security is AFFIRMED.

15 LET JUDGMENT BE ENTERED ACCORDINGLY.

16 DATED:  December 27, 2018

17 _____
                                    /s/
18                              Honorable Jacqueline Chooljian
19                              UNITED STATES MAGISTRATE JUDGE